UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY SYKES,<br><br>             Plaintiff,<br><br>   v.<br><br>GALINDO, et al.,<br><br>             Defendant. | Case No.   1:23-cv-01770-KES-EPG<br><br>ORDER OVERRULING IN PART DEFENDANTS' OBJECTIONS TO PRODUCTION OF DOCUMENTS<br><br>(ECF No. 39, 40, 41) |

Plaintiff Troy Sykes is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on December 27, 2023. (ECF No. 1). Plaintiff alleges that correctional officers and other staff at Avenal State Prison (ASP) retaliated against him for filing 602 grievances.

Now before the Court are Defendants' Objections to Court Order Requiring Parties to Exchange Documents (ECF No. 39), which claims that all documents related to the institution's investigation into Plaintiff's grievance should be withheld from production, because the investigation is confidential and related documents are protected by the official information privilege.  Plaintiff has filed two responses to Defendants' objections, arguing that the procedures for investigations are well known, and witness statements are needed for Plaintiff to present evidence in this case.  (ECF No. 42, 43).

Having reviewed the documents submitted for *in camera* review, the Court finds that Defendants' objections to production are overruled in part.

1

**I. BACKGROUND**

This case proceeds on Plaintiff's claim for retaliation in violation of the First Amendment against Sergeant Galindo, correctional officer Martin, correctional officer Oscar Hernandez, and "supervisor free cook" Hernandez. (ECF No. 8, 12). The Court's screening order described the basis for these claims as follows:

> The Court finds that Plaintiff's claim for retaliation against Sergeant Galindo should proceed past screening. Liberally construing Plaintiff's allegations, Plaintiff has adequately alleged that Sergeant Galindo took adverse actions against him including interviewing him regarding Plaintiff's staff complaint against Sergeant Galindo and telling a group of inmates that they could no longer take food home from the kitchen "because Sykes wants to file 60–602s." (ECF No. 1 at 3).
>
> In addition, the Court finds that Plaintiff's claim against correctional officer Oscar Hernandez should proceed past screening. Plaintiff has sufficiently alleged that Oscar Hernandez retaliated against him when he began to tell men going through the work change area that "nothing is coming through as long as Sykes wants to file 602s." (*Id.* at 5).
>
> Similarly, the Court finds that Plaintiff's claim for retaliation against Correctional Officer Martin and "free staff Hernandez," kitchen supervisors, should also proceed past screening. Plaintiff stated a claim for retaliation against these defendants based on his allegation that they showed inmates Plaintiff's personal file and grievances Plaintiff had filed on the kitchen, and said that if Plaintiff filed 602s, they would tell what everyone is in for. (*Id.* at 6). Plaintiff also alleges that "free staff Hernandez" specifically stopped letting men from the kitchen and vocations receive ice, claiming that "Sykes wants to file 602s." (*Id.*)

(ECF No. 8, at p. 7-8).

The Court opened discovery on February 20, 2025. (ECF No. 35). To secure the just, speedy, and inexpensive disposition of this action, the Court directed the parties to exchange certain documents, including "[w]itness statements and evidence that were generated from investigation(s) related to the event(s) at issue in the complaint, such as an investigation stemming from the processing of Plaintiff's grievance(s)." (ECF No. 35, at 2). The Court cited Supreme Court precedent stating that "proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still

2

fresh, and evidence can be gathered and preserved." *See Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006).

On December 27, 2023, Defendant filed Objections to Court Order Requiring Parties to Exchange Documents. (ECF No. 39). Defendants objected to the production of any portion of the investigation marked "Confidential" for any appeal, and state that "Any witness statements were generated in the course of investigating Plaintiff's grievances and those statements are deemed confidential." (ECF No. 39, at p. 2).

Defendant also submitted the Declaration of V. Torres, the Litigation Coordinator at Avenal State Prison (ASP), which describes the search for documents responsive to the Court's order, the documents located related to the institution's investigation of Plaintiff's allegations, and the institution's designation of all documents as confidential. It describes the risk that such documents could be given to other inmates, and the concern that disclosure would reveal investigation techniques and types of corrective measures, which could "give inmates and others insight into how to circumvent prison staff and engage in further criminal activity." (ECF No. 39-1, at p. 4). In particular, Torres notes that "the confidential interviews and threat assessments contain information from inmate informants. The informants providing us with confidential information—and their families—could be placed in serious danger. Prison gangs and inmates retaliate very harshly should they learn that a witness has shared information about unlawful activities to law enforcement." (ECF No. 39-1, at p. 2-3). Torres also explained that inmates might be less willing to speak to prison staff in the future if they believed their statements would be shared with other inmates.

Defendants also submitted a Submitted a Supplemental Declaration of Lt. A. Lara in Support of Defendants' Assertion of Official-Information Privilege and Confidentiality Designations.[1] Lt. Lara explained that Plaintiff had served requests for production of documents that called for confidential information, such as "All documents considered confidential from threat assessment conducted on Aug. 3, 2023 C-Yard Avenal State Prisons and finding of said threat assessment." Lt. Lara explained that documents responsive to these requests include

---

[1] Although Defendants did not file this declaration, they represented that they had served the declaration on Plaintiff.

"memorandums concerning debriefings by other inmates. A debriefing is where a prison inmate discloses to prison authorities what he knows about gang activities, membership, and associates." Lt. Lara stated that if these documents were disclosed "informants providing us with confidential information—and their families –would be placed in serious danger." Lt. Lara also explained that information regarding staff personnel information are confidential and "disclosure of staff personnel information is strictly prohibited to protect staff and their families from assault, harassment, retaliation, or other improperly motivated harm, including violent attacks and perhaps death."

Defendant submitted the withheld documents to the Court for *in camera* review, and provided Plaintiff and the Court with a privilege log of the documents, as required by the Court's Discovery and Scheduling Order. Specifically, Defendant submitted the following documents for *in camera* review:

- AGO 0001-0007: Allegation Inquiry Report, including Interview Summaries of the Complainant, Staff Subject, Inmate Witnesses, and Staff Witnesses;
- AGO 0008-0014: Allegation Inquiry Report;
- AGO 0015-0020: Allegation Investigation Unit Internal Affairs Administrative Investigation Report, including four interviews and eight exhibits;
- AGO 0021-0024: Memorandum on Confidential Interview with Inmate;
- AGO 0025-0031: Allegation Investigation Unit Internal Affairs Administrative Investigation Report, including four interviews and nine exhibits;
- AGO 0032-0036: Allegation Investigation Unit Internal Affairs Administrative Investigation Report, including three interviews and six exhibits;
- AGO 0037-0051: Point-In-Time Roster by Assignment, a report that lists the programs inmates were assigned to on specific dates.

Plaintiff filed two responses to Defendants' objections. (ECF No. 42, 43). In the first response, Plaintiff argues that the witness statements should be produced in discovery. He argues that the objections grossly overstate the risks involved in disclosure. Plaintiff states "[i]t is common knowledge CDCR staff has and uses confidential informants. The Plaintiff is not requesting policies or procedures used by CDCR employees to obtain this information and the

4

safety and security of the prison is not put in jeopardy by producing these documents." (ECF No. 42, at p. 2). Plaintiff claims that his housing designation shows that he is not involved in gang activities. He claims that his life was put in jeopardy by Defendants' breach of confidentiality, based on the same information Defendants now claim is confidential and cannot be disclosed in this case. Plaintiff states that he already knows how threat assessments work at the prison from his own experience. Plaintiff says he does not want to retaliate against any person who made a statement. He also argues that "this information is crucial to make witness lists and possible depositions. To support the facts stated in the Plaintiff's claim this information need to be supplied." (ECF No. 42, at p. 4).

Plaintiff's second objection (ECF No. 43) explains that he needs information regarding why he was placed in a holding cell, and that the information is neither confidential nor official-information privileged. Plaintiff believes that there are phone call interviews with Internal Affairs of CDCR that should be produced. Plaintiff states that he was present during these interviews, so they should not be confidential to him. Plaintiff claims that he knows the individuals involved in the investigation, but does not know their legal names.

## II. LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Questions of privilege in federal civil rights cases are governed by federal law. Fed. R. Evid. 501; *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 511 F.2d 192, 197 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976).

The "common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure." *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975) (citations omitted). The Ninth Circuit has since followed *Kerr* in requiring in camera review and a balancing of interests in ruling on the government's claim of the official information privilege. *See, e.g.*, *Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976) ("[A]s required by *Kerr*, we recognize 'that in camera review is a highly appropriate and useful means of dealing with claims of governmental

privilege.'") (quoting *Kerr*, 426 U.S. at 406; *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir. 1990) ("Government personnel files are considered official information. To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery.") (internal citations omitted).

### III.   ANALYSIS

The Court has reviewed the documents provided for *in camera* review with these legal standards in mind, and finds that Defendants' objections as to certain portions of these documents should be overruled.

The Court finds that interviews and summary of interviews made by the Plaintiff himself of any Defendant in this case should be produced.  These include the summary of the interviews contained in the following documents:

- AGO 0002, 0009, AGO 17, AGO 34: summary of interviews of Plaintiff Troy Sykes
- AGO 0003, 0010, 0027-28: summary of interview of Sergeant Galindo;
- AGO 0029-30: summary of interview of Defendant Oscar Hernandez

These interview summaries contain direct evidence regarding the incident in this case, including contemporary witness accounts of the event from the Plaintiff and Defendants in this case.  Such evidence is directly relevant to this case, and could be used as evidence at summary judgment or trial in this matter.

These documents may be produced in redacted form to include only the summaries of the interviews themselves, and not any other information including internal analysis or opinions regarding those summaries.[2]  The Court finds that the institution's analyses and opinions are not directly relevant to the case because they are not direct evidence of what took place, and disclosure could risk the safety and security concerns identified in Defendants' objections.

---

[2] Notably, the Court's discovery order required Defendant to produce "[w]itness statements and evidence that were generated from investigation(s) related to the event(s) at issue in the complaint, such as an investigation stemming from the processing of Plaintiff's grievance(s), if any," and noted that "Defendant(s) only need to produce documents such as a Confidential Appeal Inquiry or a Use of Force Critique to the extent those documents contain witness statements related to the incident(s) alleged in the complaint and/or evidence related to the incident(s) alleged in the complaint that will not be provided to Plaintiff separately."  (ECF No. 35, at p. 2).

The Court has also evaluated Defendants' objections and finds that the risks identified in those objections do not outweigh the benefits that disclosure of these documents would have to this case. The summaries of the interviews are short and straightforward, and do not reveal any confidential techniques that could undermine the effectiveness of such investigations in the future. Moreover, the Court is only requiring production of the summaries of the interviews themselves, and not any related discussion or evaluation of those summaries that could reveal the institution's techniques or impressions. Nor does the Court agree that disclosing such interviews would cause witnesses in the future to be less truthful in similar investigations. On the contrary, the fact that witness statements may be used later in court would seem to encourage candor in such situations. Moreover, these statements are made by the parties themselves, so Plaintiff already knows the identity of these individuals and their general role in this incident.

Thus, the Court finds that disclosure of parties' witness interviews and summaries of those interviews would promote the truth-finding process because they contain details of the parties' actions and statements recorded close to the time that the relevant events occurred. *See Woodford*, 548 U.S. at 94–95. These benefits of disclosure outweigh the potential disadvantages contended by Defendants. *See Sanchez,* 936 F.2d at 1033-34.

The investigation documents submitted for in camera review also refer to interviews and exhibits that were not submitted to the Court for in camera review.[3] Specifically, the Administrative Investigation Reports at AGO 0015-0020, AGO 0025-0031, and AGO 0032-0036 contain references to interviews and exhibits that have not been provided to the Court. To the extent these exhibits contain further details regarding the interviews of Plaintiff or any Defendant in this case, they should be produced for the reasons discussed above. Additionally, any documents authored by Plaintiff himself, such as the grievance identified at AGO 0016, should also be produced. Any photographs of Plaintiff, which are referred to at AGO 0016, shall also be produced.

The documents submitted to the Court also contain summaries of interviews of witnesses who are not parties to this case, including other inmates, regarding the incident and/or Plaintiff's

---

[3] The Court has attempted to contact defense counsel to determine the status of these exhibits, but as of the date of this order, has not received a response.

allegations. After careful review of these summaries and Defendants' objections, the Court will sustain Defendants' objection to their production and permit Defendants to withhold them from discovery. While these statements are relevant to the extent they concern the incident and/or Plaintiff's allegations at the time, based on the Court's review of their contents, the Court does not believe these witness summaries would substantially assist Plaintiff in proving his case because they either indicate a lack of information about the allegations, or are not supportive of Plaintiff's allegations. Moreover, unlike the parties in this case, the identifies of these witnesses are not already known to Plaintiff. Thus, disclosure of such witness summaries could risk retaliation against those witnesses. Moreover, future witnesses may be less willing to provide information to prison authorities if such information were made public.

The documents submitted for in camera review also include a confidential memorandum regarding an unsigned form that was submitted to a drop box, related to potential danger to Plaintiff. Based on this form, it appears that the institution conducted a threat assessment of potential danger to Plaintiff, including an interview of the person believed to have submitted the form. The Court appreciates that the relevance of this information is high, but also finds that the danger from disclosure of the identity of the author is high. From the context of this submission, it appears that the person who submitted this form wished for his or her identity to remain confidential.

Upon consideration, the Court will overrule Defendants' objection to production of the copy of the unsigned form itself, which appears on AGO 0021. This form provided notification to the prison related to the underlying incident and potential danger to Plaintiff. However, the Court will allow Defendants to withhold all other information in the memorandum, including the summary of the interview of the purported author and the institution's evaluation of the threat assessment. The Court believes this limited disclosure will provide the most relevant information to Plaintiff for his case, while protecting the identity of the individual involved and maintaining the confidentiality of the institution's assessment of the situation.

The Court sustains Defendants' objection to production to the remainder of the documents, which the Court finds have limited relevance to the case and whose disclosure would risk the safety and security dangers identified by Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendant's objection to production of documents (ECF No. 39) is overruled in part.

1. No later than 30 days from the date of this order, Defendant shall provide the following portion of documents to Plaintiff:
   - AGO 0002, 0009, AGO 17, AGO 34: summary of interviews of Troy Sykes
   - AGO 0003, 0010, 0027-28: summary of interview of Sergeant Galindo;
   - AGO 0029-30: summary of interview of Oscar Hernandez[4]
   - Any exhibits referenced in Administrative Investigation Reports at AGO 0015-0020, AGO 0025-0031, and AGO 0032-0036 that contain further details or recordings regarding the interviews of any party, documents authored by Plaintiff, or photographs of Plaintiff
   - a copy of the Health Care Services Request Form shown on AGO 0021.
2. Additionally, Defendant shall file a notice of compliance with the Court concurrently with production to Plaintiff.

IT IS SO ORDERED.

Dated:    **June 3, 2025**                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE

---

[4] Only the portions of the documents described above, containing direct evidence and summary of witness accounts of the incident, shall be produced. Defendant may redact the institution's description of the process, analysis, and conclusions of investigating staff.

9